## Harton, Appellant, v. Hildebrand.

*Contracts—Building contracts—Right to rescind—Action against trans-feree—Equity—Injunction.*

1. A building contract provided that the buildings contracted for should be built by a certain date at a price stated, and that a certain percentage of the price should be paid on an estimate of the amount of work as the buildings progressed. After some of the houses had been erected an estimate of the work done was presented to the owner and approved by him, but not paid. The owner also owed the contractor a large sum due on another building contract. By reason of mortgages, judgments and mechanics' liens filed against the properties, the contractor was without security for the amount due on either contract. At this time the owner conveyed the property to a third party. No offer was made then, or at any other time to pay the contractor the balance due him. The third party notified the contractor to go on with the work. *Held*, that the contractor was justified in refusing to go on with the work when his percentage was not paid, and in rescinding the contract after notice had been served upon him by the third party without tender of payment.

2. In such a case where it appears that the third party took the property subject to all legal claims for labor and materials furnished in and about the erection of the houses, the contractor has the right to assert his claim for work done against such third party and to have the latter restrained from selling the property until the debt should be paid.

Argued Nov. 1, 1910. Appeal, No. 194, Oct. T., 1910, by plaintiff, from decree of C. P. No. 2, Allegheny Co., July T., 1908, No. 43, dismissing bill in equity in case of William E. Harton v. William E. Hildebrand and Frank P. Howley. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to restrain the sale of houses. Before SHAFER, J.

The opinion of the Supreme Court states the case.

*Error assigned* was decree dismissing bill.

*George C. Bradshaw*, for appellant.

*J: B. Eichenauer*, with him *Paul S. Ache*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1911:

We do not agree with the learned court below in dismissing this bill which was filed to restrain the defendant Howley from selling and disposing of the houses until he had paid the debts due from Hildebrand, the other defendant, to the plaintiff Harton.

No exceptions were filed by either party to the findings of fact made by the learned trial court, and, therefore, the case must be disposed of upon those facts. They may be summarized as follows: On June 1, 1901, Hildebrand entered into a contract with Harton for the erection of eight dwelling houses on certain lots fronting on Brackenridge avenue in the thirteenth ward of the city of Pittsburg. On June 9, 1901, Frank P. Howley made a deed to Hildebrand for these lots and he proceeded at once with the erection of the buildings.

On August 7, 1901, Michael P. Howley, father of Frank P. Howley, conveyed to Hildebrand twenty-six lots of ground on Avalon street in the thirteenth ward of the city of Pittsburg. Judgment notes were given to secure the purchase money, but they were withheld from

record until the Prudential Trust Company, which was to furnish the money for the erection of the houses, had put on record as a first lien a mortgage from Hildebrand. On September 26, 1901, Hildebrand made a contract with Harton for the erection of nineteen houses on the Avalon street property. This contract provided that the buildings should all be finished by April 1, 1902, and that the contract price should be $62,149 and should be paid "by the owner to the contractor in instalments, as follows: 70 per cent of the above amount to be paid on estimated amount of work done as the buildings progress."

The Brackenridge avenue houses were completed in March, 1902. The houses on Avalon street were not finished or nearly finished by April 1, 1902, and Hildebrand and Harton agreed in the winter of 1901–1902 that no attempt should be made during the cold weather to complete these houses on April 1.

The contract price for the Brackenridge avenue houses was $18,000 and when they were completed in March, 1902, there was due from Hildebrand to Harton $5,573.61.

Harton began the Avalon street houses soon after making the contract and carried on the work until December when it was suspended, and began work again about March 1, 1902, and continued until about May 20, 1902, only nine of the houses however being begun at this or any later time by him, this action on his part being apparently acquiesced in by Hildebrand. On the latter date Harton presented to Hildebrand an estimate of the work already done on these houses showing the value of the work done to date, the seventy per cent of the amount required to be paid in installments, the amount of extra work done, the aggregate of the amount already paid him and the balance of $2,496.26 which was then due and payable. This statement was admitted by Hildebrand in writing to be correct.

In May, 1902, a number of mechanics' liens were filed against the Brackenridge property; but no liens were ever filed against the Avalon street houses.

On May 22, 1902, Harton quit work on the Avalon street houses and declared that he would not go on with the contract because of the failure of Hildebrand to pay him the sum owing on the first and on the second contracts as above stated.

On June 14, 1902, Hildebrand conveyed to Frank P. Howley both the Brackenridge avenue and Avalon street properties and as part of the same transaction an agreement was entered into between Hildebrand and Howley by which the latter accepted the conveyance subject to all legal claims for labor and materials furnished in and about the erection of the houses. By this agreement, Howley assumed payment of these claims.

On July 31, 1902, Howley wrote Harton that if the latter was willing to go on under the contract he would aid him as much as he could in the construction of the buildings; that if he declined to go on he would complete the buildings himself. This notice was given under the sixth paragraph of the contract relating to the Avalon street houses which provides that if the contractor at any time during the progress of the work fails to supply material or workmen, or causes any unreasonable suspension of work, the owner may terminate the contract and finish the buildings at the contractor's expense. Immediately upon the receipt of this communication Harton replied that as there was owing to him for a long time at least $2,500 on this contract which had not been paid, and as it was impossible by reason of the nonpayment for him to carry out the contract, that he thereupon declared the contract null and void. Howley then proceeded to finish the nine houses which cost him $12,548, more than the contract price.

The above are substantially the findings of fact by the learned trial judge. He found as a conclusion of law that the contract between Howley and Hildebrand by which Howley agreed to release Hildebrand from all claims against him arising from the purchase of the lots and the placing of the buildings thereon gave any creditor of

Howley whose claim arises out of the buildings in question a right of action against Howley for the same. He further found that the contract for the Avalon street houses does not fix any definite time at which payments on account are to be made but provides that seventy per cent is to be paid on the estimated amount of the work as the buildings progress; that an estimate for about $2,500 was made on May 20, 1902, as above stated, and on May 22, 1902, Harton threw up the contract and quit work because this estimate was not paid him. The learned court then finds as the basis of his decree: "It seems to us that under all the circumstances it was altogether unreasonable for Harton to rescind the contract for any such delay of payment as this, and that his subsequent refusal to go on with the work when called upon by Howley, the new owner, to do so justified Howley under the contract in finishing the buildings and charging the cost against Harton." The conclusion is that instead of Hildebrand or Howley being indebted to Harton, as the latter claims in his bill, there is due Howley the difference between $12,548, the excess over the contract price which Howley was required to pay to finish the Avalon street houses, and $5,573.61, the amount due from Hildebrand to Harton on the Brackenridge avenue houses. The bill was dismissed, and the plaintiff has appealed.

The parties agree that the only question in the case is whether, under the circumstances existing at the time, Harton was justified in stopping work on the Avalon street houses on May 22, 1902, and, subsequently, in refusing to proceed with it on notice by Frank P. Howley, who was then the owner of the property. As noted above, the learned court below held that "under all the circumstances it was altogether unreasonable for Harton to rescind the contract for any such delay of payment as this." The court, it will be observed, does not find that the amount of the estimate of May 20, 1902, is not correct or was not due Harton at that date, or that Howley was dissatisfied with it; nor does the court base its de-

cree against the plaintiff on either of those grounds. It, therefore, becomes important to ascertain what the circumstances were on May 22, 1902, when Harton declined to proceed under the Avalon street contract, and on August 1, 1902, when he declared the contract rescinded. While, as suggested by the counsel for the appellee, a balance due Harton under the Brackenridge avenue contract has no bearing upon the rights of the parties under the Avalon street contract and would not justify the rescission of the latter contract by Harton, yet it may not be out of place to note the fact that at the date of the suspension of work by Harton on the Avalon street houses, Hildebrand was indebted to him under the Brackenridge avenue contract which had been fully performed by Harton in the sum of over $5,500. For the payment of this balance, Harton had no security and Hildebrand had no property out of which it could be collected.

It is found as a fact that there was a balance due Harton on the Avalon street contract of $2,496.26 according to the estimate of May 20, 1902, two days prior to the cessation of work by Harton under that contract. It is contended by the appellee, Howley, that under the supplemental contract between Harton and Hildebrand the estimates were to be agreed upon by the three men, and that while Harton and Hildebrand, the owner of the lots, had made an estimate and agreed upon the amount due, Howley had not consented to its correctness and, hence, it could not be paid by the trust company who held the funds for that purpose. It will be observed, however, that the learned court below gave no weight to that contention and does not assign that as a reason for its conclusion. While the appellee suggests that it does not clearly appear whether the several installments paid to Harton on the Avalon street contract had been paid on estimates, it is a fact that several installments, thirteen in number, were paid at various times by the trust company to Harton as the work progressed. The learned court below makes no finding in regard to this matter.

In the absence of testimony to the contrary, it will be presumed that the installments were paid on estimates duly made, because the contract so provides, and Harton testifies that they were paid on estimates made by him and Hildebrand. But conceding that the written contract required Howley's consent to an estimate before it was paid by the trust company, yet by the conduct of all the interested parties in permitting the payment of the thirteen installments that provision of the agreement was apparently waived. The learned court below has not found that Howley was required to consent to the estimate of May 20, 1902, in order to make it a valid voucher for the trust company, nor does the court find that Howley did not consent to the correctness of the estimate.

The contract price was to be paid, as stipulated in the agreement, "by the owner to the contractor in installments as follows: 70 per cent of the above amount to be paid on estimated amount of work done as the buildings progress." It is manifest, therefore, that estimates were to be made as the work progressed. While the contract does not state when the estimates were to be made, yet it clearly contemplated that when an estimate had been made that seventy per cent of it was then due and payable. On May 20, 1902, an estimate of the work done and the material furnished was made, and it appeared by the estimate that there was due and payable from Hildebrand to Harton on the Avalon street contract the sum of $2,496.26. Hildebrand was the owner of the property and the money was due from him. It is not pretended that he made any offer to pay it or secure it. At that time he had no property except the Brackenridge avenue and Avalon street properties. As found by the court, there was yet due Harton on the Brackenridge avenue contract over $5,500. That property was incumbered by a first mortgage to the Prudential Trust Company and by judgments entered on notes for the purchase price of the land. Hildebrand had signed a no-lien contract. By agreement of the parties another Prudential Trust Company mortgage of $60,000

was a first lien on the Avalon street property, and it was also subject to the judgments entered for the purchase money. It is, therefore, apparent that for the balance due Harton for labor and material furnished in the construction of the Avalon street houses, recourse to that property or the Brackenridge avenue property would have availed him nothing. Hildebrand was without means and a pursuit of him by Harton would have simply resulted in the pursuer being mulcted in the cost in a vain endeavor to collect the claim.

These were the conditions existing at the time the estimate of the balance due Harton on the Avalon street contract was made on May 20, 1902, and on the second day thereafter when he declined to proceed with the work until the balance was paid. The same conditions prevailed on August 1, 1902, when he rescinded the contract. Both parties consented to the jurisdiction of equity, and that a chancellor should adjust their differences in accordance with equitable principles. Was it unreasonable, as held by the court below, for Harton to stop work under these circumstances? Was he compelled to proceed with the work, put his labor and material in it, and thus add to the amount already owed him by Hildebrand with neither property nor any responsible party in view from whom he could compel payment? Is there any principle of equity or rule of law which would require him under these circumstances to proceed with the work simply for the benefit of Hildebrand's creditors and, possibly, for the improvement of Howley's property? Having due regard for the rights of the parties under the stipulations of their contract, these questions permit of but one answer, and that is in the negative.

Mr. Howley's letter of July 31, requiring Harton to proceed with the construction of the nineteen houses did not change the situation. He made no offer at that or any other time to pay Harton the balance due him. Harton's letter of August 1, 1902, states clearly the situation at that time, and justified his action in declaring the con-

tract at an end. The balance due Harton as shown by the estimate was still unpaid and unsecured with no offer on the part of Howley to whom the real estate had been reconveyed to pay the balance. Kerner, the arbitrator, provided in the agreement of the parties, had refused to act. In other words, the conditions existing on May 22, 1902, when Harton declined to proceed with the work continued to exist on August 1, when he declared the agreement at an end. Hildebrand, the owner, had violated the Avalon street contract and he was not in a position to demand its enforcement. Howley occupied no better position. The contract was entire as to the erection of the nineteen houses, and divisible and severable as to the payment of the installments for the work and material furnished. Hildebrand's failure, therefore, to perform his part of the agreement by paying the estimate of May 20, 1902, gave Harton the right to declare the contract at an end: Rugg v. Moore, 110 Pa. 236; Easton v. Jones, 193 Pa. 147. In the last case it is said (p. 150): "While plaintiff's failure in ability or intention to complete the work will be a good defense, even to an action for a payment stipulated to become due on a state of progress shown to be reached, yet a refusal to pay such an installment without that or other legal excuse is such a breach of the contract as will justify a rescission, and entitle the plaintiff to recover pro tanto for the work."

The learned court below correctly held that the agreement between Howley and Hildebrand gives any creditor of Hildebrand whose claim arises out of the building in question, a right of action against Howley for the same. Harton, therefore, has a right to assert his claim against Howley and to have the latter restrained from selling the property until his debt is paid.

We are of the opinion that the learned judge was in error in dismissing the bill on the ground, "that under all the circumstances (as found by him) it was altogether unreasonable for Harton to rescind the contract for any such delay of payment as this, and that his subsequent

refusal to go on with the work when called upon by How-ley, the new owner, to do so justified Howley under the contract in finishing the buildings and charging the cost against said Harton." We think that Harton was jus-tified, under the facts found by the learned judge, in re-fusing to continue the work on the Avalon street houses by reason of the failure and refusal of Hildebrand to pay the estimate of May 20, 1902, and subsequently in re-scinding the contract for the continued refusal to pay the estimate. It follows that the court below should have sustained the bill and passed upon the several prayers thereof, one of which asked the court to ascer-tain the amount due from Hildebrand to Harton for the work done and materials furnished upon the contracts as set forth in the bill. We are, therefore, compelled to remand the case.

The decree is reversed, and the bill is reinstated with a procedendo.