UNITED STATES FIDELITY & GUARANTY CO. v. ROBERT GRACE CONTRACTING CO.

(Circuit Court of Appeals, Third Circuit. January 16, 1920.)

No. 2442.

1. CONTRACTS ⬤⇒288—CONSTRUCTION OF CONTRACT FOR ROAD BUILDING.

Under a contract between a surety company, which on default of a contractor for which it was surety had taken over completion of a contract with a county for certain road work, and a contracting company, which undertook to complete the work in accordance with the terms of the original contract, to be paid therefor "at the time and upon the terms mentioned in said original contract," where the original contract provided for monthly payments on estimates and certificate of the county engineer, the contracting company *held* entitled to monthly payments only in accordance with such estimates and certificates.

2. CONTRACTS ⬤⇒198(1)—CONSTRUCTION OF CONTRACT FOR ROAD BUILDING.

Under a contract between a surety company, which on default of a contractor for which it was surety had taken over completion of a contract with a county for certain road work, and a contracting company, which undertook to complete the work in accordance with the terms of the original contracts, the contracting company *held* bound by a provision of the original contract requiring the contractor to "rebuild, repair, restore, and make good at his own expense" all injuries or damages to the work, from whatever cause occurring, before final acceptance of the work, with respect both to its own work and that done by the original contractor.

3. CONTRACTS ⬤⇒261(3)—FAILURE TO PAY INSTALLMENTS JUSTIFIES CONTRACTOR'S REFUSAL TO COMPLETE WORK.

Where under a contract labor is to be performed and materials furnished by the contractor over a considerable period of time, involving large expenditures, and payments are also to be made through such period as the work progresses, the covenant of the contractor to perform the work is dependent on that of the other party to make the payments at the times specified in the contract, and, in the absence of other provisions or circumstances excusing it, failure to pay an installment when due will justify the contractor in refusing to complete the work.

4. CONTRACTS ⬤⇒212(1)—PAYMENTS "ON OR ABOUT" MAY BE MADE WITHIN REASONABLE TIME.

A provision of a contract requiring payments to be made "on or about" the 15th of each month *held* to give the party paying a reasonable time after the 15th.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, On or About.]

---

5. WORK AND LABOR ⊕═⊃14(2)—RECOVERY ON TERMINATION OF CONTRACT NOT AF-
FECTED BY PARTIAL PAYMENTS.

A contractor for construction work, who is justified in terminating the contract before completion for default of the other party, if otherwise entitled to recover on a quantum meruit for all the work done and materials furnished under the contract, is not precluded from doing so because he has received various partial payments as the work progressed, where the contract is not divisible, in the sense that such partial payments did not fully discharge all of the other party's obligations for all the work that had been done and all the materials that had been furnished up to the end of the periods covered by the partial payments, respectively.

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action at law by the Robert Grace Contracting Company against the United States Fidelity & Guaranty Company. Judgment for plaintiff, and defendant brings error. Reversed.

Stonecipher & Ralston and Patterson, Crawford, Miller & Arensberg, all of Pittsburgh, Pa. (Thomas Patterson, of Pittsburgh, Pa., of counsel), for plaintiff in error.

Reed, Smith, Shaw & Beal, Beatty, Magee & Martin, Richard W. Martin, and Edwin W. Smith, all of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

HAIGHT, Circuit Judge. [1] The defendant in error (hereinafter called the Contracting Company) brought suit in the court below against the plaintiff in error (hereinafter called the Surety Company), and recovered a judgment, a reversal of which is sought by this writ of error. The general facts, which it is necessary to recite in order that the questions in controversy may be understood, may be briefly summarized as follows:

In August, 1914, the "county court of Mercer county," W. Va., entered into a contract with the Curtis-Ward Company, a contracting concern, for the construction of certain roads in that county. The Surety Company became surety on the bond of the Curtis-Ward Company for the performance of the contract. In May of the same year one Samuel Walton had entered into a like contract with the same municipality for macadamizing and grading another road. After some work had been done under this latter contract, Walton died, and his executors, in June, 1915, sublet the contract to the Curtis-Ward Company. The Surety Company also became the guarantor to the executors of Walton for the performance of that contract. The Curtis-Ward Company failed to fully perform either contract, and the county, in February, 1916, turned over the work of completing them to the Surety Company. The latter thereupon, on February 21, 1916, entered into a contract with the Contracting Company for finishing the work required to be done under the contracts. Work was begun under this latter contract in the early part of April, 1916, and was continued, with more or less friction between the parties, until the end

of December of that year, when the Contracting Company, claiming that the Surety Company had broken the contract because it had failed to pay an installment, which the Contracting Company contended had become due for work done and materials furnished during November, notified the Surety Company that it declined to be longer bound by the contract, and of its intention to hold the Surety Company responsible for the consequences of the latter's assumed breach. The Contracting Company thereafter refused to do any further work on the contract, and subsequently brought this action.

The Surety Company took the position that the Contracting Company's action in abandoning further work under the contract was unwarranted, and accordingly not only denied all liability to the Contracting Company, but sought to recover from it, by way of counterclaim, the damages which the Surety Company had suffered as a result of what it contended was a breach of the contract on the part of the Contracting Company. These divergent contentions are primarily the result of different constructions of the contract of February 21, 1916. Consequently the main questions in the court below were, as they are here: (1) Whether the monthly payments which the Contracting Company was to receive were to be based on its own monthly estimates of the value of the work done and the materials furnished, or were to be based on the estimates made by the county engineer; and (2) whether the Contracting Company was obliged to do such work as the county engineer might require, in the way of repairing and making good any portions of the work theretofore done by either of the original contractors, and which, in the meanwhile, had become injured or damaged.

The learned trial judge construed the contract to mean that (1) the Surety Company undertook, at all events, to pay the Contracting Company in monthly installments for the actual work which it did and materials which it furnished, without regard to the estimates thereof made by the county engineer; and (2) that the Contracting Company was not compelled to do any of such repair work. We think that such a construction is erroneous in both respects.

The contract recites that the county had turned over to the Surety Company "the work of *completing* the contracts" entered into between it and the Curtis-Ward Company and Samuel Walton, respectively, and that the Surety Company was desirous of entering into a contract with the Contracting Company "to *complete* the work mentioned in the contracts * * * *in accordance with the terms of the said contracts.*" There is then a covenant by the Contracting Company "to *complete* the work" called for in the contracts "in the manner and in accordance with the plans and specifications * * * set forth in said contracts * * * to the satisfaction and acceptance of the chief engineer" of the county. The Surety Company on its part agreed to pay the Contracting Company, "as a consideration for completing the said work, the schedule of prices specified in the said contracts with the county court of Mercer county, West Virginia, and with the executors of the will of Samuel Walton, deceased," plus any unpaid "retained percentages on estimates theretofore made for work done or

material furnished," and plus "the amount of any estimate" for work done and materials furnished by the Curtis-Ward Company, for which no monthly estimate had as yet been made. The Surety Company further guaranteed that such retained percentages should amount to at least a certain sum, and it undertook, at all events, to pay that amount to the Contracting Company; it being also specifically agreed that no deduction should be made from any moneys that the latter was to receive, so far as the Contracting Company and the Surety Company were concerned, by reason of any overpayment theretofore made to the Curtis-Ward Company.

The consideration thus provided for was to be paid to the Contracting Company by the Surety Company "at *the time* and *upon the terms* mentioned in the said original contracts." But in order to facilitate the payments it was further agreed that the Surety Company should give its written order to the county to pay the Contracting Company "such sums as may be due under said contracts as the work progresses," and the Contracting Company agreed that, "so long as said payments are made by the county court *in accordance with the terms* of said contracts," it would accept them from the county rather than from the Surety Company. However, to prevent any payments to which the Contracting Company would otherwise be entitled from being withheld by the county, either permanently or temporarily, it was provided that the Surety Company should pay any money that the county might fail or refuse to pay by reason (1) of any claim made thereto by any creditor of the Curtis-Ward Company, (2) or by reason of any action or claim asserted by any trustee in bankruptcy or other trustee, (3) or *for any other reason or cause other than the default* of the Contracting Company. Provision was also made for the use by the Contracting Company, without payment therefor, of any materials left on the ground by the original contractor, or to which it would have been entitled, had it gone ahead with the performance of the contract; for the furnishing by the Surety Company of any of such materials as the Contracting Company might be unable to use because of any action by any creditor or representative of creditors of the Curtis-Ward Company; for the indemnification of the Contracting Company by the Surety Company in case the former was required to pay for any of the supplies so used, or was held liable in any action brought against it by any creditor or representative of creditors of the Curtis-Ward Company; and for the substitution of the Contracting Company to any rights that the Surety Company might have to use the machinery, tools, and other appliances of the Curtis-Ward Company.

There is thus a very complete and comprehensive contract, clearly expressed, as to the work to be done, the materials to be furnished, and by whom, the prices to be paid therefor, and how and by whom the payments were to be made, and as to other details. We have no difficulty in gathering therefrom that it was the intention of the parties that the Contracting Company was to do all the work and furnish all the materials, except such as were on the ground, etc., as before mentioned, necessary to complete the Walton and Curtis-Ward contracts with the county of Mercer, and was to be paid therefor by the

Surety Company, either directly or through the county, the schedule of prices provided in such original contracts, without deduction for defaults not due to any act or failure on the part of the Contracting Company; the payments to be made *at the times and upon the terms mentioned* in the original contracts. One of the terms of the original contracts in respect to payments was that the county should—

"upon or about the 15th day of each calendar month * * * make the contractor advance payment for and on account of the work done and materials furnished during the last preceding calendar month; *the quantity, character, and value of such work done and material to be estimated and certified by the chief engineer, with his written approval;* such advance payment not to exceed 90 per cent. *of the value as thus estimated and certified."*

According to the original contracts, therefore, the monthly payments were to be paid upon or about the 15th day of the month, according to and *only* upon the estimates of the *county engineer,* and were not to exceed 90 per cent. of the value of the work done and materials furnished, as *so estimated.* Therefore, as the payments were due under the contract in suit at the time and upon the *terms* mentioned in said original contracts, it must follow that the only monthly payments which became due from time to time, as the work progressed, were such sums as were estimated and certified by the chief engineer of the county. Any other construction must necessarily disregard the clear and explicit language of the contract. There is no provision whatever for monthly payments upon any other estimates or basis than the estimates of the county engineer.

As further showing that the construction that we have adopted is the proper one, it should be borne in mind that the parties specifically provided for contingencies, due to causes not within the control of the Contracting Company, whereby the amount to be paid by the county might be reduced. If, as the Contracting Company contends, it was the intention of the parties that the terms under which payments were to be made according to the original contracts were to have no effect upon the terms under which payments were to be made under the contract in suit, what need was there for providing for all of such contingencies?

[2] The original contracts also contained the following provision:

"The contractor shall rebuild, repair, restore, and make good *at his own expense* all injuries or damages to any portions of the work occasioned by accidental causes, or by the action of the elements, or by any causes whatsoever, before the final acceptance of the work."

Accordingly it was necessary that any repair work which the county engineer required, should be done before the work could finally be accepted and the original contracts considered as completely performed. That the parties must have contemplated, when they entered into the contract in suit, that it would be necessary for some repair work to be done, seems to be a necessary inference, in the light of the foregoing provision of the original contracts, from the fact that the roads had been in an unfinished condition for some time during a period of the year when, in all probability, the action of the elements would have injured them. The Surety Company was necessarily anxious to

have the contracts finished and its liability on the bonds terminated. It was not equipped to do the work itself, but the Contracting Company was. In this situation, the Contracting Company agreed, in the contract in suit, to complete the work called for in the original contracts in accordance with their terms and to the satisfaction and acceptance of the county engineer. But no provision was made for the payment for any repair work, although, as before mentioned, the parties were very careful to cover many contingencies whereby the amount to be paid, under the schedule of prices provided for in the original contracts, might be diminished or reduced by something not due to the fault of the Contracting Company. Thus we think that the only reasonable construction of the contract in suit is that it imposed an obligation upon the Contracting Company to do such repair work as was necessary to procure the final acceptance of the work, and that it was not entitled to any compensation therefor, except such as may have been included in the general compensation, which, under the contract, it was to receive for completing the work called for in the original contracts.

As opposed to the argument of the Contracting Company that it is unreasonable to presume that the parties intended that it should assume any such obligation, because of the uncertainty of the amount of the repair work which might be required to be done and the probability that it might be extensive, there are the further facts that its representatives examined the work, or at least an opportunity was afforded them to do so, and it is reasonable to presume that they did, and ascertained exactly what was necessary to be done, and that it was to receive the retained percentages and other moneys due Curtis-Ward Company, and was to have the right to use the materials, machinery, etc., then on the ground, or to which the Curtis-Ward Company was entitled. This extra consideration may very well have been considered by the parties as sufficient to cover the expense that it was contemplated the Contracting Company might be put to if called upon to do the repair work.

Having thus reached the conclusion that the trial judge misconstrued the contract in two important particulars, and that at no time was the Contracting Company at liberty to demand, under the contract, by way of monthly payments, more than 90 per cent. of the value of the work done during the preceding month, as estimated by the county engineer, and at no time was it authorized to demand anything for the work required to be done by the county engineer in the nature of repairs to the work previously done by the Curtis-Ward Company, it is next necessary to consider what effect such erroneous construction had upon the right of either party to recover in this action. It appears that, at the time the Contracting Company stopped work, it had been paid by way of monthly installments sums in excess of the county engineer's monthly estimates and had received payments under a supplemental agreement (to be hereinafter explained) for the before-mentioned repair work, which in the aggregate exceeded the moneys which the Contracting Company claimed were due at that time. Therefore, as the Contracting Company had been overpaid, it

is entirely clear that, *on the facts referred to up to this point,* it was not justified in abandoning further work under the contract because of nonpayment of the bill rendered in December for work done in November. Hence the result would be that, instead of there having been a breach of the contract on the part of the Surety Company, the Contracting Company was in default in failing to proceed with and complete the work called for in the contract. In this contingency, not only was the Contracting Company not entitled to recover anything, but the Surety Company would have been entitled to recover whatever damages the evidence might have demonstrated that it had suffered as the result of the Contracting Company's breach of the contract. Because of the construction given to the contract by the trial judge, the Surety Company was precluded from showing what these damages were. It is true that the Contracting Company, in its letter of December 30th, attempted to place the Surety Company's breach of the contract both upon the ground that there had been a failure to pay the December bill and upon the ground that the Surety Company had directed the Contracting Company to take its plant from the Princeton road.

As to whether the Contracting Company was justified in abandoning further work under the contract on the latter ground, it is sufficient to say that this question was in no way submitted to the jury, nor apparently considered by the parties, at the trial, as of any importance. On this appeal, therefore, we do not feel at liberty to determine whether it has merit or not. But there are certain other facts which we think should be referred to because they may possibly, by way of estoppel, afford the Contracting Company a right to recover, notwithstanding nothing was actually due it when it terminated the contract, although, for reasons to be presently given, they can have no effect on the ultimate disposition which we must make of the case on the record now before us. Within a comparatively short time after the Contracting Company began work a dispute arose as to whether it was required, under the terms of the contract, to do the before-mentioned repair work, and the parties thereupon, in order to temporarily bridge the difficulty, on July 7, 1916, entered into a supplemental agreement, whereby it was provided that the Contracting Company should do such of the repair work as was necessary to secure the final approval and acceptance of certain of the roads by the county engineer; that if it should thereafter be determined that the Contracting Company was entitled to compensation therefor, then the Surety Company would pay the former the actual cost of such work, plus 15 per cent.; that during the time such work was being done the Surety Company was to pay the Contracting Company therefor, on monthly estimates, on the 15th day of each month, the compensation thus provided for; and that if it should thereafter be determined that the Contracting Company was required, under the main contract, to do such repair work, and was to receive no compensation therefor, then the Contracting Company was to return the money so paid to it by the Surety Company. This latter contract contained the following provision:

263 F.—19

"It is further agreed that neither party hereto shall be held to have waived or released any right or privilege which it may have under the said original contract [contract of February 21, 1916], and that neither party is to be estopped by this contract, or by any act or conduct which may be done hereunder, from setting up, asserting, or enforcing in any manner any such right or privilege which it has under the said original contract."

It further appears that, a difference having developed between the Contracting Company's estimate of the value (at the schedule of prices contained in the Curtis-Ward and Walton contracts) of the work done in April and May and that made by the county engineer, and the Contracting Company having insisted that it be paid according to its estimate, and the Surety Company being desirous of having the work completed, the latter thereupon paid the monthly bills rendered by the Contracting Company with two checks, one representing the amount of the county engineer's estimate, and the other the difference between that estimate and the estimate of the Contracting Company's engineer; the latter being specifically paid under protest. This practice was followed up, without any notice of any purpose to depart from it, until the Contracting Company stopped work on the contract. After the supplemental agreement of July 7th was entered into, a third check was drawn, when each payment was made, representing the amount due the Contracting Company under that agreement for the repair work.

Whether the payment of the difference between the county engineer's estimate and that of the Contracting Company's engineer was the result of an express agreement, or more properly speaking an arrangement, between the Contracting Company and the Surety Company, was a fact about which there is a conflict in the evidence. The question as to whether or not there was such an express agreement was not submitted to the jury; apparently because of the construction of the main contract which the trial court adopted. It is clear, however, that so far as creating a legal obligation on the part of the Surety Company to pay for the repair work during the progress thereof, the contract of July 7th was without consideration, as it is also clear that if there was in fact any agreement to pay, during the progress of the work, the difference between the county engineer's estimates and those of the Contracting Company, such an agreement was likewise without consideration, because the original contract, as we have found, imposed an obligation upon the Contracting Company to do the repair work without additional compensation, and to accept, so far as monthly payments were concerned, for doing the other work, such sums as the county engineer should, from time to time, estimate was the value of the same. There would also seem to be no doubt that the moneys paid pursuant to the contract of July 7th, and if there existed any agreement regarding the payment of the differences between the Contracting Company's and the county engineer's monthly estimates, that the payment of such differences, from time to time, were in no respect voluntary payments, but were exacted from the Surety Company as a condition for the further performance of the Contracting Company's obligations under the main contract. But it appears

that from the time the contract of July 7th was entered into, and from the time the April and May estimates (which were paid at the same time) were paid, the Surety Company continued to pay for the repair work on the Contracting Company's monthly estimates thereof, and to pay the difference between the Contracting Company's and the county engineer's monthly estimates of the other work without other objection than that such difference was paid under protest.

When the December bill was presented, the Surety Company did not take the position that it was under no obligation to pay the same because the Contracting Company had already been overpaid, but merely asked for time in which to pay it, because it had not received the county engineer's estimate. Indeed, very shortly after the Contracting Company notified the Surety Company that it would treat the contract at an end because of the latter's nonpayment of the December bill, the Surety Company sent a check to the Contracting Company for the amount of that bill. Whether under these circumstances, and in the absence of any repudiation of the before-mentioned practices and arrangements, the Surety Company was thereafter estopped to assert, as against the Contracting Company's right to treat the contract at an end because of the former's failure to pay the December bill, the fact that when that bill was presented the Contracting Company had then been paid more than was then due under the main contract, we do not attempt to decide, because that question was not argued before us, nor was it submitted to the court below—either the trial judge or the jury —for decision. It is clear, however, that if the Surety Company is not so estopped, the Contracting Company was not justified in abandoning further performance of the contract on account of the Surety Company's failure to pay the December bill, because, as before stated, when the same was presented, the Contracting Company had already been paid more than was actually due it at that time, in accordance with the contract, properly construed. It is therefore manifest that the erroneous construction of the main contract on the part of the trial judge entitles the Surety Company to a new trial.

[3] Although the conclusion which we have thus reached has relieved us of any real necessity of passing upon any of the other questions in the case, we feel that we should indicate our views on some of them, because they will in all probability arise on another trial of the case. The discussion up to this point has proceeded on the assumption that the failure to pay the December bill when it became entitled the Contracting Company to abandon further work on the contract and treat it as rescinded, provided, of course, anything had actually been due then, or that the Surety Company was estopped, as before mentioned. The failure to pay the December bill when due was treated by the court below, subject to a finding by the jury that the provisions of the contract in respect to the manner and time of payments had not been modified by the parties, as a complete justification for the Contracting Company's refusal to proceed with the work and for its subsequent action in treating the contract as at an end. That view was not based on the well-settled principle that an abandonment of further performance by the person to whom payment

is due is justified on the ground that there has been a repudiation of the contract on the part of the person from whom the payment is due, because of *persistent* refusals to pay installments or other circumstances which indicate an *inability* or *determination not to pay the installments due, as well as future installments.* Phillips, etc., Const. Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Canal Co. v. Gordon, 6 Wall. 561, 18 L. Ed. 894; Knotts v. Clarke Const. Co., 249 Fed. 181, 161 C. C. A. 217 (C. C. A. 7th Cir.).

Indeed, the evidence would not seem to have justified any such conclusion. But the ruling of the court below seems to have been based upon the broad provision that the time of payment of installments, in a contract such as that in suit, is so material a part thereof and so completely goes to the essence of the contract that a failure to pay an installment when due justifies the party to whom payment is due in declining to complete the work. For the proposition thus advanced, the decision of the Circuit Court of Appeals of the First Circuit in Carlin Construction Co. v. Guerini Stone Co., 241 Fed. 545, 553, 154 C. C. A. 321, is a direct authority. Although there has been some contrariety of opinion in the reported cases on this subject, it is more apparent than real, because each case has, of necessity, been decided on its own peculiar facts. In some, the covenant to do the work and the covenant to pay for the same have been found to be not *dependent* one upon the other, but *independent* of each other, in which case the only remedy of the person to whom payment is due is to sue for the unpaid installments; in others, the decisions have been based on the ground that under the provisions of the contracts before the courts in those cases, time of payment was not a material stipulation. Perhaps there is no real distinction between the last two classes of cases. It would unduly burden this opinion to attempt to review the authorities. Many of them will be found collected in 9 C. J. 725. It is sufficient to state that we approve of the rule announced in Carlin Const. Co. v. Guerini Stone Co., supra, supported, as we think it is, both by reason and cogent authority, especially of the state where this suit was tried. Worden v. Connell, 196 Pa. 281, 46 Atl. 298; Harton v. Hildebrand, 230 Pa. 335, 79 Atl. 571.

Consequently the contract in suit being one where labor was to be performed and materials furnished over a considerable period of time, and in which large sums of money were to be expended by the contractor, and where payments, based on the amount of the work previously done, were likewise spread over a long period of time as the work progressed, it follows that the covenant of the contractor to perform the work was dependent upon the covenant of the Surety Company to pay for the same as the work progressed and at the times specified in the contract; time of payment being a material stipulation and of the essence of the contract, unless there is some provision of the contract which necessarily compels a finding that it was the intention of the parties that such covenants were to be independent of each other, or that the time provided for the payment of the monthly installments was not a material stipulation. We can find no such provision. Indeed, the original Curtis-Ward contract and the

original Walton contract each contains a provision "that the time shall be of the essence of this contract and shall not be relievable against in equity or at law."

[4] As before noted, the contract in suit provides that payments shall be made to the Contracting Company at the *time* and upon the terms mentioned in the original contracts. Therefore a neglect to pay the December bill at the time specified in the contract, provided, of course, that the Surety Company is estopped as before mentioned, would have justified the Contracting Company in abandoning further work under the contract and treating it as at an end, unless there are some other circumstances that would force a contrary conclusion. These other circumstances may possibly be found (we do not wish to be understood as deciding that they may or may not) in the fact that the payments were to be made "on or *about*" the 15th of each month, coupled with the other circumstances which surrounded the parties at the time the Contracting Company terminated the contract, because we think that, under the circumstances of this case, the word "about" should be construed to mean within a reasonable time after the 15th of the month, and because what was a reasonable time would depend upon all the facts and circumstances, bearing in mind, of course, that time of payment was a material stipulation of the contract. It was probably for the jury to say whether, under all of the circumstances, this reasonable time for paying the December bill had elapsed when the Contracting Company abandoned further work under the contract.

If the Surety Company be given credit on a new trial of this action (if any there shall be) for all moneys which it has paid the Contracting Company on account of the contract, the value of the materials which were on the work when the Contracting Company undertook the performance of the contract, or which were subsequently furnished to it by the Surety Company, and for the use of such tools and appliances as were furnished by the Surety Company directly or indirectly, because they had been left on the work by the Curtis-Ward Company, there will be no merit in the contention urged before us that the Contracting Company could not rescind the contract, or, more properly speaking, could not treat it as at an end on account of the Surety Company's breach and consequent repudiation, because, as is contended, it was not possible to place the Surety Company in statu quo. Manifestly the giving of the credits before mentioned will place the Surety Company in statu quo. We do not wish to be understood by anything we have just said as indicating that at the trial the jury was not instructed to give the Surety Company credit for all items within the above category, to which the learned trial judge's attention was directed.

[5] The Contracting Company was allowed to recover on the basis of the fair and reasonable value of all the work done and materials furnished by it. The Surety Company contends that there was error in this respect. Its insistment is that the Contracting Company had been paid in full, except for the retained percentages of 10 per cent., for the work, as it progressed, according to the rates or prices fixed

by the contract, and that it can only recover the fair and reasonable value of that part of the work for which it had not been paid, plus the retained percentages of 10 per cent. of the amounts already paid. In support of this proposition, counsel rely upon the decision of the Court of Appeals of Maryland in Rodemer v. Gonder, 9 Gill, 288, and the construction which it is claimed that Prof. Keener, in his work on Quasi Contracts, placed upon the decision of the Supreme Court of Ohio in Doolittle v. McCullough, 12 Ohio St. 360; the same having been approved by the special master, whose judgment was affirmed by the Supreme Court of Pennsylvania, on the reasons given by him, in Philadelphia v. Tripple, 230 Pa. 480, 79 Atl. 703. The Surety Company did not at the trial, and does not now, take the position that it is not the general rule, as the trial court held, that one of the parties to a building contract, who is excused from fully performing the contract by reason of the wrongful act of the other party, may, at his election, treat the contract as rescinded and sue on a quantum meruit for the reasonable value of the work done and materials furnished in partial performance of the contract; but the contention is that such rule is inapplicable to this case, except to such part of the work done and materials furnished as were included in the bill rendered in December for work done in November, and which, as before stated, was not paid. Indeed, the Surety Company's position at the trial seems to have been that the Contracting Company could not recover the moneys which it had expended, but only upon a quantum meruit.

As to what one may recover upon the breach of a construction contract when he is not in default—that is to say, in cases where he has been prevented from completely performing the contract by the act of the person for whom he is doing the work (and in this connection a refusal of the latter to pay installments due is treated as tantamount to an actual prevention of performance)—the courts in different jurisdictions are not in accord. Two or more different rules have been announced; they differ on the question as to whether the rate of compensation fixed in the contract is to govern, or whether more may be recovered than would have been realized at the contract rate. For examples of two of the rules, see Kehoe v. Rutherford, 56 N. J. Law, 23, 27 Atl. 912 (where the recovery was limited to the contract price), and Brown v. Woodbury, 183 Mass. 279, 67 N. E. 327 (where recovery was allowed on a quantum meruit), in both of which a number of cases from other jurisdictions are collected and discussed. The Court of Appeals of Maryland, in the decision before referred to, probably laid down merely another rule, applicable, however, only to those cases where the contract is divisible, in the sense that it can be said that a payment theretofore made paid for and discharged all obligations in respect to a particular part of the contract or a part of the work to be performed thereunder, so that, to that extent, the contract had been performed by both parties. To the same effect, we think, is the decision in Doolittle v. McCullough, if the construction placed upon it by Prof. Keener is correct.

In view of the variant rules followed by the different courts, and

in view of the fact that the Surety Company has not questioned, except as before pointed out, the correctness of the rule followed by the trial court, which would permit a recovery in excess of what would have been realized under the contract, we deem it inadvisable in this case to determine which of the several rules commends itself most favorably to us, preferring to withhold a decision on that point until the question is squarely raised and in issue before us. Assuming, however, for purposes of argument, that the rule contended for by the Surety Company is sound as respects cases to which it is applicable, still we think that the trial court committed no error in declining to apply it to this case, because it cannot be said that the payment of any of the monthly bills rendered by the Contracting Company discharged the Surety Company's obligation for all work done and materials furnished up to the end of the period for which such bill or bills were rendered. This necessarily follows, we think, in addition to the fact that the monthly estimates were not conclusive, from the fact that the Contracting Company was to receive, not only the unit prices provided for in the original contracts, but also the retained percentages due to the Curtis-Ward Company, all moneys due for work done and materials furnished by the latter company, for which no monthly estimate had been made, and was to receive certain materials and supplies and was to have the use of certain tools and machinery. No attempt was made in the contract or otherwise to apportion these items over the various parts of the work. Moreover, a large part of the moneys which the Contracting Company received were paid under protest and the Surety Company's liability therefor left open for future determination.

We think that there was no error in the exclusion of the two telegrams, a failure to admit which in evidence is assigned as error. They were merely parts of the preliminary negotiations which eventually ripened into a written contract.

The judgment is reversed, and a new trial granted.