Johnson, J.
In its entry reversing the judgment of the trial court, the court of appeals stated that the judgment below was reversed “for error in the admission of evidence and in the charge of the court; no other error appearing in the record.”
The issues of fact made by the pleadings were found by the jury in favor of the plaintiff and the court of appeals did not find that the verdict was against the weight of the evidence. The record discloses that the contract was made by the parties, as alleged in the petition, and we must accept it as established that the rate fixed in the contract was a reduced rate given in consideration of entering into a contract for a year. The contract contained the following provision: “All advertising copy received hereunder will be subject to the approval or revision of the editorial department. All instructions to the publisher relative to advertisements must be given in writing. The publication of copy last' *386 furnished on contracts stipulating space to be used on stated days or specific weeks shall continue until new copy is given.” The copy which was rejected by plaintiff on the 28th of March, 1919, simply stated that the Standard theater’s “ad.” would appear in the morning papers. This the editorial department of the plaintiff rejected in the exercise of the right reserved to it by the provisions of the contract above quoted.
It is contended by the defendant in error that if the plaintiff disapproved of the copy furnished it should under the contract have continued the publication of the advertisements theretofore published. That would have required the plaintiff to publish advertisements of pictures which were no longer being shown on its screens by the defendant. Such publication would not only be useless, as between the parties, but would be false and misleading to the public. It would injure the newspaper by undermining the confidence of the public. It is not such a publication as was contemplated by the - contract.
But it is contended by defendant in error, and the court of appeals seems to have entertained the view, that, conceding that defendant committed a breach of the contract by refusing to furnish further copy, plaintiff had no right to sue upon quantum meruit, but should have sued as for a breach of the contract to recover the damages sustained by reason of that breach. The trial court against the objection of the defendant had admitted evidence offered by the plaintiff as to the value 'of the advertising at transient rates in the absence of contract, and charged the jury that on breach of the contract by *387 the defendant the plaintiff was entitled to recover as upon quantum meruit. So that the decisive question in the case is, What is the measure of damages where a contract such as here involved is breached by the advertiser ?
In Wellston Coal Co. v. Franklin Paper Co., 57 Ohio St., 182, the court says, at page 185: “The general rule is,- that when full performance of a contract has been prevented by the wrongful act of the defendant, the plaintiff has the right either to sue for damages, or he may disregard the contract and sue as upon a quantum meruit for what he has performed. The plaintiff has pursued the latter course; and it seems well settled, both on reason and authority, that he had the right to do so.” And the court cites with approval a number of cases in support of that proposition.
In the United Press Assn. v. National Newspaper Assn., 237 Fed. Rep., 547, a contract providing for the furnishing of news service for the period of five years was involved. After the expiration of a considerable portion of the term the contract was breached by the defendant. It was held that where one party repudiates a continuing contract the injured party may (1) treat the contract as rescinded and recover on a quantum meruit so far as he has perfornied, or (2) keep the contract alive for the benefit of both parties, being at all times himself ready and able to perform at the end of the time specified in the contract, and sue and recover under the contract, or (3) he may treat the repudiation as putting an end to the contract for all purposes of performance and sue to recover *388 as far as he has performed and for the profits he would have realized if he had not been prevented from performing.
In a work published in 1920, Williston on Contracts, the rule is stated at page 2641, volume 3, as follows: “Where the plaintiff’s failure to fulfil completely his obligations under the contract is due to the defendant’s default there is no reason for imposing any limitation on the amount which he may recover on a quantum meruit or quantum valebat for what he has done, other than that set by the principles of fair value previously stated.”
In Johnston v. Star Bucket Pump Co., 274 Mo., 414, it is said at page 450: “But in a case where the owner violates or breaches the contract, we universally say the plaintiff can elect to sue in quantum meruit rather than for damages on the contract. If he does so sue, the special contract performs no function in that suit. The defendant cannot undertake to limit the recovery by the terms of the contract, because he has breached the contract. To permit him to use his breached contract to limit a recovery against him, would be to pay to him a premium for his own wrong. The law does not contemplate such.” To the same effect are Woodward on Quasi Contracts, 434; City of Philadelphia v. Tripple, 230 Pa., 480; Wheelock v. Zevitas et al., 229 Mass., 167, and United States v. Behan, 110 U. S., 338, 345.
The language used by the municipal court in its charge was: “I say to you, as a matter of law, that if you find that the defendant committed a breach of the contract by failure to do that which he was *389 bound to do, plaintiff may treat the contract as cancelled and sue for the value of the services already performed under the contract. In such a case, the plaintiff is not bound by the contract price if the contract would be at an end, but may recover as payment for the services rendered the reasonable value thereof, and it makes no difference that the reasonable value for such services is greater than the contract price.”
We think that by the clear weight of authority the proposition thus laid down is correct'.
In support of a defense that the prevention was not wrongful it is competent for defendant to show that in the circumstances of the particular case the plaintiff would necessarily have lost more by performing the contract at the agreed price than by not performing. (Wellston Coal Co. v. Franklin Paper Co., supra.) That variation has no application here.
The pleadings in this case.made a direct issue as to whether the rate of 13J cents per line daily was a reduced rate made to defendant in consideration of entering into a contract for the period of one year, and the verdict of the jury resolved this issue in favor of the plaintiff. It is matter of common knowledge that sound business policy would lead the publisher of a newspaper to fix a less rate for advertising when contracts can thereby be secured for long periods of time. The business of a publisher would be in a constant state of uncertainty if he was compelled to rely upon transient advertising from day to day in the making up of his daily issue.
*390 The uncontradicted testimony of witnesses for the plaintiff showed that the value of transient advertising in a paper such as the Cleveland News was twenty-five cents per line. But it is contended that if there was a display of twenty inches for a week, or for longer than one day, of the same advertisement, and that similar advertisements were continued for a few days or a week at a time, over the period of the seven months involved in this controversy, the evidence should have shown the value thereof and should have been confined to the proper rate for such advertising. It would have been undoubtedly competent for defendant to have averred and shown that state of facts, and that the value of the actual service rendered was thereby reduced. In this case, however, there was no such averment or proof. The witnesses for the plaintiff testified that the transient rate in the absence of contract was twenty-five cents. The plaintiff’s witnesses conceded that if a particular “ad.” was to be continued for a week, or more than one day, a different rate could be procured by contract, but in this case the contract was for the entire year and there was no effort to contract for shorter periods. Inasmuch as the testimony of the witnesses for the plaintiff, to the effect that rates in the absence of contract, or transient rates, were twenty-five cents a line, was uncontradicted, and no showing was made as to lesser value where the same “ad.” was continued for a week without contract, we see no error in the admission of the testimony, or in the finding of the jury.
*391 For these reasons the judgment of the court of appeals will be reversed and that of the trial court will be affirmed.

Judgment reversed.

Hough, Robinson and Matthias, JJ., concur.