# Worden *v.* Connell.

*Contract—Building contract—Arbitration.*

Where parties to a building contract submit a dispute as to the construction of the contract to arbitrators mutually chosen, although the contract itself provided that the decision of the architect should in such a matter be final, both the owner and the contractor are irrevocably bound by the decision of the arbitrators; and if the contractor resumes the work on the lines laid down by the award and the owner stops him, he may recover for the work already done. In such a case the contractor is not bound to go on and complete the work as a condition of his recovery, if the owner gives him peremptory notice to quit.

In an action by a contractor on a building contract where it appears

that the owner had peremptorily notified him to quit, the plaintiff may
show that the contract had been complied with up to the date when the
first payment was due, and that defendant had expressed herself as satis-
fied therewith; and the contractor may also show that the owner at the
date of her discharge of the contractor, promised to pay him his demand.

*Contract—Building contract—Expert testimony.*

In an action upon a building contract to recover for work done, after
the owner had peremptorily stopped the work, a carpenter and builder of
twenty years' experience may be permitted to testify as to the reasonable-
ness of the charge for the work in controversy.

*Contract—Building contract—Arbitrators—Notice.*

In an action upon a building contract where it appears that arbitrators
mutually chosen had passed upon a dispute relating to the terms of the
contract and that immediately the contractor resumed work, and accord-
ing to his testimony had quit four or five days thereafter in consequence
of a peremptory notice from the owner to stop work, the attorney for the
owner will not be permitted at the trial to testify that a month after the
date of the award, he had notified the contractor to resume work.

Argued Feb. 19, 1900. Appeal, No. 125, Jan. T., 1899, by
defendant, from judgment of C. P. Lackawanna Co., Jan. T.,
1896, No. 19, on verdict for plaintiff, in case of Hiram S. Wor-
den v. Mary Connell. Before GREEN, C. J., McCOLLUM,
MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit on a building contract. Before PURDY, P. J.,
specially presiding.

The facts appear by the opinion of the Supreme Court.

Verdict and judgment for plaintiff for $1,500. Defendant
appealed.

*Errors assigned* were (1–4) the rulings on evidence referred
to in the opinion of the Supreme Court; (5–12) portions of
charge referred to in the opinion of the Supreme Court.

*T. P. Hoban* and *I. H. Burns*, with them *P. W. Stokes*, for
appellant.—The plaintiff's claim was for work and labor done
under a contract. Our defense was that the work was not done
in accordance with the terms of the contract. The question
of performance and of the value of the work was for the jury
and not for the court, and in order to determine that question,
both sides should be heard: Crawford & Moyes v. McKinney,
165 Pa. 611; Miller v. Phillips, 31 Pa. 218; Smith v. Brady,
17 N. Y. 173.

*Harry C. Reynolds*, with him *George L. Peck*, for appellee, cited Shaw v. Lewistown, etc., Turnpike Co., 3 P. & W. 445, Rugg v. Moore, 110 Pa. 237, Lovell v. St. Louis Mutual Life Ins. Co., 111 U. S. 264, Clark v. Philadelphia & Reading Coal & Iron Co., 40 Leg. Int. 140, Dubois v. Del. & Hudson Canal Co., 4 Wend. (N. Y.) 285, Hall v. Rupley, 10 Pa. 231, Moulton v. Trask, 9 Metcalf (Mass.), 577, Fletcher v. Cole, 23 Vt. *114, Moorhead v. Fry, 24 Pa. 37, and Groves v. Donaldson, 15 Pa. 128.

OPINION BY MR. JUSTICE DEAN, May 23, 1900:

Defendant, in 1895, was the owner of a lot of ground in the city of Scranton, and desired to build upon it a house at a cost of about $2,500. She secured the services of E. G. Worden, a resident architect, to design and prepare a plan and specifications, and also to supervise the work; when the plan was prepared, bids for the work, a frame dwelling, were solicited. There were a number of bidders, and the architect with the consent of Mrs. Connell, accepted that of his brother, M. E. Worden, and the contract was awarded to him; accordingly a writing was executed between them dated August 5, 1895, by which work was to be commenced immediately, and be made to conform to the plans and specifications, subject to changes according to red lines upon the plan made by the architect, and subject, also, to such explanations and changes as should be directed by him; his decision, as to the true " intent of the drawings and specifications " was to be conclusive, and thereby become part of the contract; any alterations or additions made during the progress of the work were to be appraised fairly by him and allowance made therefor to the contractor. Free access to the work, for purpose of inspection, while it was going on, by both owner and architect, was stipulated for.

The price, $2,500, was to be paid as follows : $1,200 when the house was under roof; $500 when ready for plastering; $400 when plastering was finished; balance when contract was completed. The contractor commenced work; in less than two months, a dispute as to its interpretation arose between him and Mrs. Connell; this dispute was not referred to the architect, but both parties agreed, in writing, to submit it to arbitrators, one to be chosen by each party, and these two, in case

of disagreement, to select a third; the parties made a selection of C. T. Boland and George W. Finn, who, after careful examination of the contract and specifications, and work already done, in a detailed statement, specified what changes and alterations ought to be made in the work, and that the contractor should be paid $20.00 for the additional cost.

There was evidence that the contractor undertook in good faith to complete the building in accordance with the terms of the award, but that the owner failed to make payment as stipulated in the agreement, and because of her failure, he stopped the work; he also offered evidence that she directed him to stop, saying she would have the building finished by another builder, but at the same time promised to pay him for the work already done. The defendant alleged the work was not being done according to the contract, and at least insinuated, if she did not directly charge, that the architect was in collusion with his brother, the contractor, to cheapen the work by inferior material and workmanship, and that while she paid him $400 of the first payment, she deferred paying, according to the strict terms of the contract, until he performed the work in accordance with its terms. The evidence was contradictory and the court below submitted it to the jury to ascertain the truth, instructing them: 1. That if the contractor was in good faith endeavoring to perform his contract, as pointed out by the contract and arbitrators, and that if when he insisted on the payments being made as promised, the defendant ordered him to quit work, then he was entitled to a verdict for the balance of the value of the work and material furnished at the date he stopped. 2. That if they should find, that defendant had substantially complied with her contract, and did not, without excuse, withhold payment justly due him, and did not peremptorily discharged him, they should find a verdict in her favor. Under these instructions, the jury found for plaintiff the balance due him when he quit the work. We have now this appeal by defendant, assigning thirteen errors, four of them to rulings on offers of evidence, and nine to the charge.

Taking up those to the charge of the court first, we fail to discover any substantial error. It will be noticed that the parties, with a full knowledge to the effect of such action, submitted their dispute to arbitrators mutually chosen. It seems,

the architect's original plan and specifications provided for a house much larger than the one finally decided upon, and costing certainly over $1,000 more; when Mrs. Connell rejected this plan, because of the cost, the architect reduced the dimensions of the house and size of the rooms; the change was indicated by retaining the original drawings and indicating upon them the new lines with red ink; and this was the working plan for the builder; it is not improbable that this litigation arises from this slovenly method of putting the plan on paper; the owner and contractor put different interpretations upon it; the defendant did not probably understand it, but the architect who made the plan was her architect, even though the brother of the builder; the changed plan, as finally adopted, was the one the contractor bid on; if it was subject to conflicting interpretations, the fault was her own. But however this may be, the whole contention as to interpretation was voluntarily submitted to arbitration; the arbitrators seem to have carefully performed their duty; no hint of misbehavior or partiality on their part is suggested; therefore, after they made their award in writing under their hands and seals, indicating at length and in fullest detail, the true interpretation of the agreement, both parties were irrevocably bound by it; the obligation of the contractor had then to be measured by the decision of the arbitrators. Neither party complained of the award, and it may be implied both were satisfied with it. The contractor resumed work, as he testifies fully intending to carry it on as directed by the award, but worked only four or five days until she ordered him to quit. True, the owner denies this, and gives a different version of the circumstances; but if the jury believed that when the house was ready for plastering, she had only, after repeated demands, paid $400, when she ought to have paid $1,700, that justified plaintiff in abandoning the work; or, if at that stage of the work, she peremptorily ordered him to quit, and said she would have the house finished by another builder, that warranted him in stopping. All the conflict of evidence on both questions was for the jury. The court plainly instructed the jury that the plaintiff was bound to fulfil his contract according to its terms before he could recover anything, and that unless he was excused by the conduct of defendant, he was bound to complete it before he

could recover; this is the settled law. If defendant desired a more specific enunciation of it, so as to call the attention of the jury to its application to a particular view of the evidence, her counsel should have requested the court to so charge. The cases of Shaw v. Lewistown, etc., Turnpike Co., 3 P. & W. 445, and Hocking v. Hamilton, 158 Pa. 107, are both in point on the general rule, and it is unnecessary to burden this opinion with the citation of the very numerous cases. Appellant's counsel, in their argument here, and in their attitude at the trial in the court below, seem to have assumed that the jury would be with them on the facts; they were probably surprised by the verdict, but the court below having entered judgment upon it, we cannot cure any error, if error there was, of the jury, when they could not have been misled by error in the charge. Without taking up the nine assignments of error to the charge and discussing them separately, what we have said disposes of every real question raised by them, and therefore they are overruled.

As to the first assignment, which alleges error in admitting evidence, that the contract had been complied with up to the date when the first payment was due, and that defendant had expressed herself as satisfied therewith, that was an assential part of plaintiff's case. The submission of the disputed interpretation of the plans to arbitrators, in no way relieved him from the duty of performing his contract before that time, and on the interpretation of both parties, he was not at that time in default. The second exception, to admission of testimony, that the owner, at the date of her discharge of the contractor, promised to pay his demand, is not sustained; the testimony tended to show an admission of the justice of his claim then, by the same person who at the trial denied it. As to the testimony of George W. Finn, a witness who had twenty years of experience as a carpenter and builder, that the charge of $693 was a reasonable one for the carpenter work, plumbing and trimming, it was competent and relevant; he had carefully examined the building, and his estimate was evidence, even if only an estimate. True, the exact cost of material, piece by piece, and wages of labor, day by day, would have been, perhaps, more convincing, if such testimony had been produced, but that does not stamp an estimate by an experienced builder

as either incompetent or irrelevant. The fourth assignment is to the rejection of the testimony of P. W. Stokes, attorney for appellant, that he, as her attorney, on November 5, 1895, served written notice on plaintiff to resume work or she would hold him answerable for damages. It will be noticed that the decision of the arbitrators was on October 8, previous; Worden alleged that then he resumed work and demanded of the owner that she comply with her contract as to payment, which she did not do; then in four or five days, she peremptorily discharged him; these two were the only excuses offered by him for noncompletion of his contract; on the truth of these, he must stand or fall; that nearly a month after he stopped work, she after consultation with counsel, requested him to resume it, tended to prove nothing in issue; if he had inexcusably stopped, he could not recover; if without excuse he did not resume work, defendant's case was no stronger; if the stoppage was justifiable, and her default and conduct were not excusable, she could not condone her breach of contract by asking him to resume work a month after he had justifiably quit; we do not think there was error in rejecting the written notice; but in fact defendant was not injured thereby; while the court rejected the written notice, because it was only a copy and not the original, a reason that would hardly sustain the ruling, still, Mr. Stokes was permitted to testify, that he called upon plaintiff and delivered to him the copy, and told him Mrs. Connell wanted him to resume work on the building by a certain date, and that Worden replied he had nothing more to do with it. Defendant, therefore, had all the benefit of this late demand and refusal that she could have had from the admission of the writing. This exception is overruled.

On the whole case we discover no error warranting a reversal, therefore the judgment is affirmed.