## Appeal of Gentile et al.

54

*George W. Musser*, for Liquor Control Board.

*Oscar B. Goldstein*, for Dorothea Harmon Jones, licensee.

*Clark W. Martin* and *H. C. Marshall*, for Thomas Bubonovich, assignee.

*E. J. McDaniel*, for Guido Gentile and Theresa Gentile, assignees.

*J. R. Smiley*, for C. B. Marucci, assignee.

DUMBAULD, P. J., October 27, 1941—From the testimony taken at the hearing of September 13, 1941, and that before the Pennsylvania Liquor Control Board, August 19, 1941, and stipulation contained in the testimony, on these appeals, the trial judge makes the following

*Findings of fact.*

1. Dorothea G. Harmon (now Dorothea G. Jones) is the holder of a restaurant liquor license and amusement

permit, at R. D. No. 1, North Union Township, Fayette County, Pa.

2. By agreement, dated June 19, 1941, Dorothea G. Harmon, licensee as aforesaid, agreed to sell and transfer, subject to the approval of the Liquor Control Board, the said liquor license and amusement permit to Thomas Bubonovich and C. B. Marucci, "for the sum of $710, payable in cash, upon the transfer of said license".

3. The agreement contains the following language:

"The said $710 being this day placed in escrow in the hands of J. R. Smiley, attorney-at-law, Uniontown, Pa., and to be held by him until the final transfer, at which time the money is to be turned over and paid to the said Dorothea G. Harmon."

4. On June 23, 1941, Mrs. Harmon inquired of Mr. Smiley whether the $710 had been placed in his hands, and was told by him that the deposit in escrow had not as yet been made.

5. Thereupon, she gave oral notice to Mr. Smiley that, if the money were not placed in his hands on that day, she intended to make an agreement for the transfer of license with other parties, viz, Guido and Theresa Gentile, who were able and willing to deposit in escrow the amount of the consideration for the transfer.

6. Mrs. Harmon notified Thomas Bubonovich of her conversation with Mr. Smiley and advised him of what she had told Mr. Smiley.

7. The money was not placed in Mr. Smiley's hands by either Bubonovich or Marucci on that day (June 23, 1941).

8. On June 25, 1941, a check for $710 was placed in Mr. Smiley's hands and the cash thereon received by him on June 26, 1941.

9. In the meantime, Dorothea G. Harmon, by agreement dated June 23, 1941, covenanted with Guido Gentile and Theresa Gentile, his wife, inter alia, as follows:

"Now, this agreement witnesseth, that for and in consideration of the sum of One and no/100 Dollars, each to the other in hand paid, the receipt whereof is hereby acknowledged, and the further covenants and agreements hereinafter contained, the said party of the first part does hereby agree and consent to the transfer of her license aforesaid, to the said parties of the second part, subject to the approval of the Pennsylvania Liquor Control Board, first had and obtained, and agrees to make, execute and sign any and all papers which may be necessary to effect the said transfer to the said parties of the second part.

"The second parties agree to place in the hands of E. J. McDaniel, attorney-at-law, Uniontown, Pa., a certified check, payable to the said party of the first part, in the sum of seven hundred ten and no/100 ($710) Dollars, in full payment for the transfer of said license, and all rights and privileges thereunder.

"It is also hereby agreed that after the said transfer shall have been effected, the said escrow agent shall deliver said check to the said party of the first part."

10. Application in due form for the transfer of this license to each of the several vendees was filed with the Liquor Control Board, at Harrisburg, requesting the transfer to Guido Gentile and Theresa Gentile, on June 24, 1941, and to Thomas Bubonovich and C. B. Marucci, on June 26, 1941. The formal sufficiency of both applications is asserted by the Liquor Control Board.

11. On August 19, 1941, a hearing upon both of these applications was held in Pittsburgh, Pa., at which certain facts were stipulated and entered upon the record, which record has been made a part of the testimony in these appeals.

12. After consideration, the Liquor Control Board, on September 3, 1941, refused both applications. This refusal was based on the ground that the board does not have jurisdiction to determine the contractual relationship of the two applicants for the transfer of the

same license. The board found no reason for refusal of a transfer to either applicant, except the conflict in title to the legal right to transfer under the circumstances as presented to the board. At the hearing of this appeal, counsel for the Liquor Control Board maintained the position that, because of the language contained in section 408 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, the Liquor Control Board possesses discretion to transfer or refuse to transfer licenses "as the Board may determine."

## Discussion

In consideration of the facts found, two interesting legal questions are presented for determination.

1. What is the extent of the discretion of the Liquor Control Board in granting or refusing a transfer of license?

2. What is the jurisdiction of the court in these appeals to pass upon the contractual relationship of each of these applicants with the holder of the license?

The trial judge is satisfied that the discretion of the Liquor Control Board in the matter of the transfer of liquor licenses is exactly the same as its discretion in the granting or refusing of original applications for licenses.

He is also satisfied that the appeal of each of these applicants confers upon the court jurisdiction to determine the status of applicants in their contractual relationship with the license holder, and to direct a transfer to the one whose prior right is legally established.

## I.

Section 408 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, 47 PS §744-408, is in this language:

"Licenses issued under this act may not be assigned. The board is hereby authorized to transfer any license from one person to another, or from one place to an-

other within the same municipality or both, *as the board may determine* (italics supplied) ; but no transfers shall be made to a person who would not have been eligible to receive the license originally, nor for the transaction of business at a place for which the license could not originally have been issued lawfully."

We cannot agree with the contention of the Liquor Control Board as asserted by its learned counsel that the use of the words "as the Board may determine" confers upon that body as to transfers a wider discretion than is conferred upon it in section 403, as to the original granting of the license.

We are definitely of the opinion that the board is limited in its exercise of discretion in transfers of licenses to the same rules and legal restrictions that surround the original granting or refusal of licenses.

The board has presented this same contention to several of our brethren of the common pleas and we find no instance in which its contention has not been refused.

In Larkin's License, 35 D. & C. 684, Rosen, J., says:

"The transfer of a license from one location to another is subject to the same conditions as the issuance of a new license for the new location. If the applicant were entitled to a new license for the location in question, he is entitled to a transfer of an existing license, and the board similarly has no discretion in the matter."

The exact question was presented to the Quarter Sessions of Erie County, in Popp's License, 41 D. & C. 500. Evans, J., of that court, in an exceedingly strong and lucid opinion, reaches the same conclusion as that of Rosen, J.

We need not repeat here the entire opinion which covers each phase of the question. We do, however, adopt the reasoning and accept the exposition of the language of the act leading up to his conclusion.

We think it proper, however, to literally quote portions of the opinion found on pages 502 and 503, as follows:

"To accept the board's version of the meaning of the words in dispute would be to place a strained and unnatural construction thereon. The word 'determine' in its common and accepted meaning, as defined in the New Century Dictionary, means to 'bound, limit, prescribe, fix, . . . to . . . settle definitely; . . . to decide upon; . . . to conclude from reasoning or investigation . . .' This is the obvious intent of the legislature in its use of the word in the Liquor Control Act. The Liquor Control Board is an administrative body, with powers designated to it by the Commonwealth, and can act only in accordance with the provisions of the Liquor Control Act, section 408 of which was inserted to the end that licenses might, under certain circumstances, be transferred. This section begins, first, by stating the broad principle that licenses may not be assigned, and then it proceeds to prescribe the methods and circumstances under which transfers can be made by and with the approval of the board. To this end certain situations are outlined. Thus the words 'as the board may determine' can only mean that the function of the board is to 'decide upon' and to 'conclude from reasoning or investigation' whether or not the person and place are properly within the original license restrictions. This section, therefore, read in conjunction with section 403 of the act, brings into bold relief the intention of the legislature. . . .

"It is unreasonable to assume that the act was intended to give the board wider discretion in the case of a license transfer than it had at the time of the original application.

"From this we conclude the Pennsylvania Liquor Control Board has no discretion in granting or refusing the transfer of an existing license, if all the requirements of the Pennsylvania Liquor Control Board have been met."

Without further elaboration, we conclude that section 408 of the Pennsylvania Liquor Control Act does not confer upon the Liquor Control Board a wider discretion in the matter of transfer of licenses than is conferred by section 403 of that act as to the original granting or refusal of licenses and that it is mandatory upon the board to transfer the license, when the provisions of the act and regulations of the board have been complied with. No discretion to do otherwise is vested in the board.

## II.

The second point, that of jurisdiction to determine in these two appeals the respective rights of two applicants for a transfer of the same license, presents a novel and interesting situation.

In view of what we have concluded as to the discretion of the Liquor Control Board, the one or the other of these applicants is entitled to a transfer of the license. The board has assented to the proposition that the papers of both applicants are in proper form, and that other conditional requirements have been complied with. In passing upon the appeals of both these applicants, we must, therefore, decide which of them is the possessor of a valid contract with the holder of the license for such transfer.

In deciding between the conflicting claims of these applicants, we are required to resort to the legal principles involved in the construction and interpretation of contracts under certain described conditions.

The owner of the license first covenanted to sell to Bubonovich and Marucci the license in question and her contract implies her joining in the required proceedings for presentation of the application for transfer to the Liquor Control Board. This contract mentions a consideration which is to be received by her only upon the final transfer of the license. Pending the proceedings for the transfer, the contract contemplates that the consideration of $710 should be in es-

crow in the hands of J. R. Smiley, attorney for the purchasers.

The contract recites that "the $710 was this day [June 19] placed in escrow in the hands of J. R. Smiley, attorney at law, Uniontown, Pa." The same sentence contains the provision that this money is "to be held by him until the final transfer, *at which time* the money is to be turned over and paid to the said Dorothea G. Harmon." (Italics supplied.)

It is to be noted that this language accepts as a fact the placing of the money in escrow and distinctly fixes the time and the condition upon which it is to be delivered to Mrs. Harmon.

Because the consideration had not actually been deposited in the hands of Mr. Smiley on June 23rd, Mrs. Harmon undertook to rescind her contract with Bubonovich and Marucci and executed a new contract of sale with the other applicants, Guido and Theresa Gentile.

Her right thus to rescind the contract first made, a properly executed and sealed instrument, must determine the rights, with reference to this license, of these two applicants. If the contract with Bubonovich and Marucci, executed and delivered and acted upon, could not be legally rescinded for the reason advanced by the vendor, then their contract and application are valid in every respect. If, for the reason advanced, Mrs. Harmon had the legal right to rescind her contract with Bubonovich and Marucci, then the contract entered into on June 23rd with the other applicants is valid and binding and their application is the one that is to be recognized by the Liquor Control Board.

In passing upon this question, all the circumstances are to be considered. It is to be noted that the contract recites the placing of the money in escrow. It contains no provision by which failure to put this money in escrow on the same day that the contract was signed, in contradiction of the recital in the contract that it

actually is placed in escrow, shall give to the grantor the right to rescind the contract. The time at which the vendor may actually receive possession of the money is fixed as the time of the final transfer. The vendor's vital interest was in knowing that the consideration was available in the hands of the escrow agent at the time when she would become entitled to receive it. During the time that the Liquor Control Board would be considering the application, her rights would be fully protected by the fact that during this preliminary period the money was actually in possession of the escrow agent. When the application for transfer in this case was presented to the board on June 26th, the money was actually in the possession of Mr. Smiley and in case of transfer ready to turn over to the vendor in the transaction.

As noted, the contract contains no condition upon which the vendor may exercise the right to rescind because of the manner in which the deposit in escrow was handled. The failure of petitioners Bubonovich and Marucci to place the money in Mr. Smiley's hands on June 19th, when, in fact it was so deposited on June 26th, at a time before there was any possibility of the vendor obtaining legal possession thereof, was an immaterial detail that is insufficient to justify a rescission of the entire contract.

The subject of material failure of performance by one party to a contract and the discharge of duty as to the other party to the contract has been the subject of much legal discussion.

The American Law Institute's Restatement of Contracts goes into it in several sections. Thus, in section 274, under the heading "Failure of Consideration as a Discharge of Duty" the rule is stated thus:

"(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise

is not in terms conditional. *An immaterial failure does not operate as such a discharge.*" (Italics supplied.)

To properly apply this rule, it is necessary to determine the distinction between material and immaterial failure of performance. The same authority proceeds, in section 275, to lay down rules for determining materiality of failure to perform.

"In determining the materiality of a failure fully to perform a promise the following circumstances are influential:

"(*a*) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

. . . . . . . .

"(*c*) The extent to which the party failing to perform has already partly performed or made preparations for performance;

. . . . . . . .

"(*f*) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract."

In our case, it is apparent that Mrs. Harmon stood to obtain the entire benefit which she could have reasonably anticipated.

Paragraph (*a*) is, therefore, directly applicable to the facts of the case. Considering the failure as to the injured party, there can be no doubt that the fact that the money was in the hands of Mr. Smiley when the application for transfer was presented to the board gives to the vendor every substantial benefit which she could have reasonably anticipated by reason of the requirement of a deposit.

Paragraph (*f*) is also directly applicable. There is no uncertainty present in our case as to the actual performance of the duty on the part of the applicants to make the deposit in escrow. It had already been made before the time in which possession thereof could pos-

sibly come to the vendor. Thus, any uncertainty as to its being there when required was entirely removed.

Paragraph (a) of section 276 of the same authority seems to exactly describe the facts of our case. The heading is "Rules for Determining Materiality of *Delay* in Performance." (Italics supplied.)

"In determining the materiality of delay in performance, the following rules are applicable:

"(a) Unless the nature of a contract is such as to make performance on the exact day agreed upon of vital importance, or the contract in terms provides that it shall be so, failure by a promisor to perform his promise on the day stated in the promise does not discharge the duty of the other party."

We have already shown that performance on the exact day agreed upon could not possibly be of vital importance to this vendor. We have already shown that the contract in terms does not provide that it shall be so. These two facts make paragraph (a) of section 276 an applicable and controlling statement of the law in our case.

In commenting upon this rule, the authors give this illustration:

"7. A agrees to sell, and B to buy Blackacre, for the price of $10,000, the transfer to be made on March 1. A tenders performance on March 1. B then states that he wishes to carry out the contract but has not the necessary price at the moment. A replies that unless immediate performance is made he will not carry out the contract. On the following April 1, B sues for specific performance, making an offer in his pleading to pay with interest the agreed price. The contract may be specifically enforced."

Our appellate courts have given effect to the principles underlying these rules: Sylvester v. Born et al., 132 Pa. 467; Morrell v. Broadbent, 291 Pa. 503.

In this latter case we have facts that closely parallel the facts of our case. Except that the contract was

with reference to real estate, there is no real distinction. In the cited case, provision was made for a down payment of $500 on a total consideration of $20,000, $500 before August 25th of the year in which the agreement was signed, on July 10th, and $9,000 at settlement. Final settlement was to be made on November 1st.

Performance of the contract was resisted because the August 25th payment of $500 was not made on or before that date, although all of the purchase money was tendered on November 1, 1925, the date particularly mentioned in the agreement as the date for final settlement. Mr. Justice Frazer says (p. 505) :

"The defense was based solely on the failure of plaintiff to pay the additional installment on or before August 25th. The court below deemed this sufficient reason for refusing a decree of performance, and dismissed the bill.

"Ordinarily, failure to pay money on a particular day is not such material departure from the terms of a contract as to justify a rescission by the other party, as the delay may be fully compensated by the payment of interest; hence time is not considered as of essence of a contract unless there is an additional factor, such as wilful refusal to pay or change in the circumstances or in the situation of the parties resulting in injury from the delay, insufficient to be compensated by the mere allowance of interest: Remington v. Irwin, 14 Pa. 143; Sylvester v. Born, 132 Pa. 467; King's Est., 215 Pa. 59; or unless the parties have expressly agreed that time should be treated as essence of contract."

Commenting at length upon the rules set down in the Restatement of Contracts, Cunningham, J., in Farrell, to use, v. H. Platt Co. et al., 142 Pa. Superior Ct. 242, sums up the situation in this language (p. 252) :

"As a general proposition, the question whether or not a failure to make stipulated payments justifies the rescission of a contract is dependent upon the surround-

ing circumstances as found by a jury or other fact-finding tribunal: *Easton v. Jones*, 193 Pa. 147, 44 A. 264; *Worden v. Connell*, 196 Pa. 281, 46 A. 298; *U. S. Fidelity and Guaranty Co. v. Grace Contracting Co.*, 263 Fed. 283; and *Young Construction Co. v. Road Improvement District No. 2*, 297 Fed. 127."

Hetkowski, etc., v. Dickson City Borough School Dist., 141 Pa. Superior Ct. 526, also contains a somewhat lengthy discussion of the Restatement rules, as found in section 274 et seq.

Hirt, J., in his opinion puts it thus (p. 531) :

"The general rule applicable to this finding and the admitted facts is: '(1) In promises for an agreed exchange, any material failure of performance by one party not justified by the conduct of the other discharges the latter's duty to give the agreed exchange even though his promise is not in terms conditional. An immaterial failure does not operate as such a discharge'."

The application of these rules to the facts of our case makes it entirely clear that the attempt of Mrs. Harmon to rescind the contract of June 19th was not based on any material failure of performance, and that the agreement continued and continues to be a valid and binding obligation between the parties thereto.

It follows that, when the application of Bubonovich and Marucci was filed with the Liquor Control Board on June 26, 1941, all the requirements and conditions of the Liquor Control Board having been complied with and the consideration money being actually in escrow with the prescribed party, for payment to the vendor upon the transfer of the license, there remained in the board no legal discretion to refuse the transfer of the license.

Having thus at length determined that the reasons assigned by Mrs. Harmon for the rescission of the contract first made with Bubonovich and Marucci are not

sufficient to justify her conduct, it follows that the subsequent agreement with Guido Gentile and Theresa Gentile, dated June 23, 1941, was void and of no binding effect. Mrs. Harmon was then bound by a valid contract to proceed in securing a transfer of the license to the other parties. She had nothing to sell to Gentile and his wife. The contract attached to their application for a transfer of license did not confer upon them rights which can be enforced as against the other applicants. An agreement to buy a chattel or a right that is not the property of the vendor at the time of such agreement confers no enforcible right, as to third parties, upon the purchaser.

By stipulation and agreement of counsel, both appeals are considered together and the one order will dispose of both cases.

### Conclusions of law

The trial judge states the following conclusions of law:

1. The words "as the Board may determine," as contained in section 408 of the Pennsylvania Liquor Control Act of June 16, 1937, P. L. 1762, do not confer upon the Liquor Control Board a wider or broader discretion in the matter of transfer of such licenses than is conferred upon that board by the language of section 403 of the said act, with reference to the original granting of such licenses.

2. The court, on appeal, has jurisdiction to determine the status of two applicants who have been refused a transfer of the same liquor license by the Liquor Control Board because of the fact that the board refused to determine the conflicting rights of these applicants, and, having concluded that the agreement with one of the contending applicants is valid, and continuing, to order that the license in question be transferred to the applicant thus holding legal title to the right of transfer.

3. The attempted rescission by the grantor, of her contract with Bubonovich and Marucci, is based upon a matter that, under the facts found in this case, is an immaterial matter, and, therefore not sufficient to justify the rescission of the agreement.

4. The agreement first made, signed, sealed and delivered is therefore a valid and binding obligation of all the parties thereto and entitles the second parties to the transfer of the license in question.

5. The contract of June 23, 1941, between Dorothea Harmon Jones and Guido Gentile and Theresa Gentile, his wife, having been executed while the valid contract with the other parties, referred to in the preceding conclusion, remained effective, is invalid, void, and incapable of conferring upon the second parties a right which the first party did not at that time possess.

6. Bubonovich and Marucci are legally entitled to a transfer of the license in question.

7. Guido Gentile and Theresa Gentile have no legal right to the transfer of this license.

### Order

Now, October 27, 1941, for the reason that the Pennsylvania Liquor Control Act makes it mandatory upon the board to transfer a license when the provisions of the act and regulations of the board have been complied with, and no discretion to do otherwise being vested in the board, and the court having found that Bubonovich and Marucci at the time of the filing of an application for a transfer of the license were the holders of a bona fide valid and existing contract for the sale by the then owner and holder of the license to them, the order of the board is reversed and it is directed that the transfer of license to Bubonovich and Marucci be issued as applied for.

The appeal of Guido Gentile and Theresa Gentile be, and the same hereby is, dismissed.